**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASHA SMITH, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:20-CV-2086 |
| UNIVERSITY OF PENNSYLVANIA, | ) ) | |
| Defendant. | ) ) | |
| EMMA NEDLEY, on behalf of herself and All others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:20-CV-03109-TJS |
| UNIVERSITY OF PENNSYLVANIA, | ) ) | |
| Defendant | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE AND APPOINT INTERIM CLASS COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………… 1

STATEMENT OF FACTS……………………………………………………….. 2

ARGUMENT…………………………………………………………………….... 2

I.  The Actions Should be Consolidated for All Purposes………………………….. 2

II.  This Court Should Appoint Lead Interim Class Counsel………………………... 4

    a.  Standard for Appointment of Interim Class Counsel………………………... 4

    b.  Proposed Co-Lead Interim Class Counsel Has Thoroughly
    Identified and Investigated the Claims……………………………………… 6

    c.  Proposed Co-Lead Interim Class Counsel is Experienced in
    Handling Class Actions and Other Complex Litigation…………………….. 9

        i.  Anastopoulo Law Firm, LLC………………………………………... 9

        ii.  Eric M. Poulin………………………………………………………. 10

        iii.  Roy T. Willey, IV…………………………………………………….. 12

        iv.  Carlson Lynch, LLP…………………………………………………. 14

    d.  Proposed Co-Lead Interim Class Counsel Has the Ability
    and Desire to Commit the Necessary Resources to Represent
    the Classes…………………………………………………………………… 17

III.  The Court Should Order the Consolidation of Pleadings and Set a
Deadline for the Filing of Plaintiffs' Consolidated Complaint………………….. 18

CONCLUSION………………………………………………………………………. 19

# TABLE OF AUTHORITIES

### Cases

Anchor Motor Freight v. Koser, 10 D. & C. 3d 497 (1979)………………………………...3

Brown v. Access Midstream Partners, 2015 WL 1471598, at *4 (M.D. PA 2015)…………...…..4

Douglas v. Haier Am. Trading, LLC, No. 11-cv-02911 EJD (PSG), 2011
U.S. Dist. LEXIS 91695 (N.D. Cal. Aug. 17, 2011)………………………………………...…5

Fields v. Provident Life and Accident Ins. Co., No. 99-4261, 2001 WL 818353,
(E.D. Pa. July 10, 2001)……………………………………………………………..…3

In re Calif. Title Ins. Antitrust Litig., No. 08-01341 JSW, 2008 WL 4820752,
(N.D. Cal. Nov. 3, 2008)………………………………………………………………..5

In re Remicade Antitrust Litig., No. 17-CV-4326, 2018 WL 514501,
(E.D. Pa. Jan. 23, 2018)………………………………………………………………...6

In re TMI Litig., 193 F.3d 613, 724 (3d Cir. 1999)……………………………………….3

Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2nd Cir. 1990)………………………….4

Manger v. Dunning, 23 Pa. D. & C. 3d 554 (1982)……………………………………….3

Ramirez v. J.C. Penney Corp., No. 6:14-CV-601, 2014 U.S. Dist. LEXIS 198780,
(E.D. Tex. Aug. 20, 2014)………………………………………………………………...4

Rangel v. Cardell Cabinetry, LLC, No. SA-13-CA-843, 2014 U.S. Dist.
LEXIS 190210, (W.D. Tex. Jan. 22, 2014) …………………………………………….5

U.S. v. Knauer, 149 F.2d 519, 520 (7th Cir. 1945)……………………………………….3

### Rules

Fed. R. Civ. P. 23……………………………………………………..…..1, 4, 5, 6, 7, 8, 9

Fed R. Civ. P. 42………………………………………………………….1, 2, 3, 4, 18

### Other Authorities

Manual for Complex Litigation (4th ed. 2006)…………………………………………2, 3, 4, 5, 6

Moore's Fed. Prac. (3d. Ed. 2007)…………………………………………………...7

**INTRODUCTION**

There are two related class action lawsuits presently pending before this Court: *Smith v. University of Pennsylvania*, No. 2:20-cv-02086-TJS, and *Nedley v. University of Pennsylvania*, No. 2:20-cv-03109-TJS. Both of these class action lawsuits seek to represent substantially the same class of people for essentially the same claims, are based on similar factual allegations, and are against the same defendant, University of Pennsylvania. Through the present motion, the Plaintiffs in these actions, Asha Smith and Emma Nedley (collectively, "Plaintiffs"), jointly seek to have their separate actions consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Accordingly, Plaintiffs hereby move this Court for orders:

(1) Consolidating the Actions pursuant to Federal Rules of Civil Procedure, Rule 42(a);

(2) Appointing interim class counsel pursuant to Federal Rule of Civil Procedure, Rule 23(g)(2); and

(3) Setting a schedule for the filing of Plaintiffs' Consolidated Complaint.

This motion is brought on the grounds that the actions are substantially similar, such that consolidation of these cases will promote efficiency and conserve judicial resources. This motion is additionally brought on the grounds that the appointment of interim class counsel and the consolidation of pleadings will likewise promote efficiency and best serve the interests of the putative Classes.

This Motion is based upon the following legal memorandum of points and authorities, the complete files and records in the two related actions, and such other written argument as the Court may consider.

**STATEMENT OF FACTS**

*Smith*, and *Nedley* are, for all intents and purposes, the same case. Both arise exclusively from the closure of University of Pennsylvania's campus and the shift to online learning and services as a result of the COVID-19 pandemic. *See Smith* Compl. ¶¶ 1-4; *Nedley* Compl. ¶¶ 1-7. The plaintiff in each case purports to represent a materially identical class. *Compare Smith* Compl. ¶ 44 (seeking to represent two sub-classes of "[a]ll people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester" and "[a]ll people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester"), *with Nedley* Compl. ¶ 51 (seeking to represent a class of "all persons who paid tuition and the Mandatory fees for a student to attend in-person class(es) during the Spring 2020 semester, Summer 2020 semester, and any future semester at the University but had their class(es) moved to online learning."). Both complaints assert claims for breach of contract, *Smith* Compl. ¶¶ 56-63, 73-80; *Nedley* Compl. ¶¶ 59-64 and unjust enrichment, *Smith* Compl. ¶¶ 64-72, 81-89; *Nedley* Compl. ¶¶ 65-70. Nedley adds a common-law conversion claim, *Nedley* Compl. ¶¶ 71-80. This additional claim is predicated on exactly the same facts as the contract and unjust-enrichment claims. Finally, both cases seek the same relief—a refund of tuition and fees reflecting the allegedly diminished value of online instruction and services. *See, e.g., Smith* Compl. ¶¶ 63, 72, 80, 89; *Nedley* Compl. ¶¶ 64, 70, 80.

**ARGUMENT**

**I.      The Actions Should be Consolidated for All Purposes**

Under Federal Rule of Civil Procedure 42(a)(2), Consolidation is appropriate where multiple actions before the Court "involve a common question of law or fact." *See* Manual for Complex Litigation, Fourth, § 11.631, at pp. 121-22 (2004). Subdivision (a) of this rule relating to

2

consolidation of actions for trial was designed to encourage such consolidations where possible. U.S. v. Knauer, 149 F.2d 519, 520 (7th Cir. 1945), *certiorari granted*, 326 U.S. 714, *aff'd*, 328 U.S. 654, *reh'g denied*, 219 U.S. 828, *petition denied*, 332 U.S. 834. Consolidation is at the discretion of the trial court. Fields v. Provident Life and Accident Ins. Co., No. 99-4261, 2001 WL 818353, at *6 (E.D. Pa. July 10, 2001). Further, consolidation is only a matter of convenience and economy in administration. In re TMI Litig., 193 F.3d 613, 724 (3d Cir. 1999) amended, 199 F.3d 158 (3d Cir. 2000) (citation omitted). When actions involving a common question of law or fact are pending before the Court, the Court on its own motion or on motion of any party may order a joint hearing or trial of any or all the matters in issue in the actions, may order all of the actions consolidated, and may make such orders concerning proceedings therein as may avoid unnecessary costs or delay. Manger v. Dunning, 23 Pa. D. & C. 3d 554 (1982).

Factors to be taken in consideration in such a motion are the similarity or dissimilarity of the basic facts, the possibility of duplication of issues and the problem of potential inconsistent verdicts. Anchor Motor Freight v. Koser, 10 D. & C. 3d 497 (1979). Courts have recognized that putative class actions are particularly well-suited for consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case supplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved.

*Smith* and *Nedley* arise from the same facts, purport to represent the same class, raise the same claims, seek the same relief, and are subject to the same defenses. Consolidation is necessary to promote judicial economy and prevent inconsistent rulings. As detailed above, the complaints are materially identical—they allege the same facts and assert common claims. Further, discovery, merits litigation, and class-certification proceedings in these cases are likely to overlap. Any

documents or testimony potentially relevant to one action would also be relevant to the other two. Such repetitive discovery would unduly burden the Court, parties, and witnesses. Consolidation, by contrast, will allow the Court to guide the parties in formulating a comprehensive pretrial discovery plan that would avoid repetitive discovery, reduce litigation costs, minimize inconvenience to parties and witnesses, and allow these cases to proceed most efficiently as a single consolidated action.

As noted above, consolidation is appropriate where, as here, there are actions involving common questions of law or fact. Fed R.Civ.P. 42(a); see also Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2nd Cir. 1990). Given the substantial overlap on the factual and legal issues presented in the Actions, that test is met here and, accordingly, the Actions should be consolidated.

II. **This Court Should Appoint Lead Interim Class Counsel**

a. **Standard for Appointment of Interim Class Counsel**

The appointment of interim class counsel is recommended early in the litigation to protect the interests of the proposed Class. See Fed. R. Civ. P. 23(g); Manual for Complex Litigation (4th ed. 2006); see also Fed. R. Civ. P. 23(g)(2)(A) (providing for the designation of interim class counsel to act on behalf of a proposed class before the determination of class certification). Under Federal Rule of Civil Procedure 23(g)(3), a "court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."

Federal courts across the country have routinely recognized that appointing interim counsel at an early stage of class action litigation serves to best protect the interests of the putative class. See, e.g. *Brown v. Access Midstream Partners*, 2015 WL 1471598, at *4 (M.D. PA 2015); , Ramirez v. J.C. Penney Corp., No. 6:14-CV-601, 2014 U.S. Dist. LEXIS 198780, at *5 (E.D. Tex. Aug. 20, 2014) (". . . appointing interim counsel at this early stage will protect the interests of the

proposed . . . class, and promote efficiency for the Parties and the Court."). Courts in other districts recognize the same principle. *See, e.g.*, Douglas v. Haier Am. Trading, LLC, No. 11-cv-02911 EJD (PSG), 2011 U.S. Dist. LEXIS 91695 (N.D. Cal. Aug. 17, 2011) (granting stipulation to appoint as interim class counsel the only two firms with a case on file); In re Calif. Title Ins. Antitrust Litig., No. 08-01341 JSW, 2008 WL 4820752, at *1 (N.D. Cal. Nov. 3, 2008) (appointing interim "co-class counsel" where there were "no competing applicants."); Rangel v. Cardell Cabinetry, LLC, No. SA-13-CA-843, 2014 U.S. Dist. LEXIS 190210, at *11 (W.D. Tex. Jan. 22, 2014).

Appointment of interim class counsel is appropriate at this time. Appointment of interim class counsel will define the roles and responsibilities of attorneys in the action, will encourage those so appointed to zealously invest their time and financial resources in the litigation, will eliminate doubt about their role in the litigation should additional related cases be filed, and will avoid distracting and protracted leadership contests if other related cases are filed. Appointing Anastopoulo Law Firm, LLC ("Anastopoulo") and Carlson Lynch, LLP ("Carlson Lynch") as interim class counsel will achieve these goals.

Although the rule states the court "may" appoint an interim counsel, courts construing Rule 23(g)(3) have relied on the Advisory Committee Notes (the "Notes") accompanying the rule to hold that appointment of interim class counsel is useful because it "clarifies responsibility for protecting the interests of the class during precertification activities." In complex cases especially, appointment of interim class counsel can clarify the responsibilities of the parties prior to class certification. Manual for Complex Litigation (Fourth) § 21.11 ("Manual"). As further stated in the Manual, the Court should "conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the

parties on their side, and that their charges will be reasonable." Manual § 10.22. Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." Id. § 10.221. Courts in this district have held "[t]he same factors enumerated in Rule 23(g)(1) that govern the appointment of class counsel apply when appointing interim class counsel.*" In re Remicade Antitrust Litig.*, No. 17-CV-4326, 2018 WL 514501, at *1 (E.D. Pa. Jan. 23, 2018). Rule 23(g)(1)(A) provides, in relevant part that in appointing class counsel the Court must consider:

i. The work counsel has done in identifying or investigating potential claims in the action;

ii. Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

iii. Counsel's knowledge of the applicable law; and

iv. The resources that counsel will commit to representing the class.

Here, Plaintiff has assembled a reputable team consisting of both national counsel experienced in this particular field of litigation, and reliable and reputable local counsel who are intimately familiar with the local rules and customs of this Court. This team of lawyers and law firms has and will continue to work tirelessly to fully represent the interests of the Class.

Plaintiff proposes the interim appointment of Anastopoulo and Carlson Lynch as attorneys for the putative Class. Specifically, Plaintiff proposes leadership by attorneys Eric M. Poulin and Roy T. Willey, IV of Anastopoulo and attorneys Gary F. Lynch and Edward W. Ciolko of Carlson Lynch.

**b. Proposed Co-Lead Interim Class Counsel Has Thoroughly Identified and Investigated the Claims**

First, the Court must consider the work counsel has done in identifying and investigating the particular claims in this case. While no one factor under Federal Rule of Civil Procedure

23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

Moore's Fed. Prac. § 23.120(3)(a) (3d. Ed. 2007).

Here, Anastopoulo and Carlson Lynch's work in identifying and investigating the claims in this case demonstrates that they have and will continue to fairly and adequately represent the proposed Class. For example, Proposed Interim Class Counsel has performed the following work thus far:

a. Investigated potential legal claims arising from Defendant's closure of its campus and failure to provide in-person classes during the latter half of the Spring 2020 semester;

b. Reviewed and analyzed numerous articles describing Defendant's challenged conduct;

c. Reviewed and analyzed Defendant's website;

d. Reviewed and analyzed Defendant's policies, student handbooks, and course catalogs;

e. Conferred with potential consulting experts regarding the technical aspect of Defendants' conduct; and

f. Reviewed and analyzed Defendant's billing records, and students' payment records, relating to the Spring 2020 semester;

g. Investigated the nature of the challenged conduct at issue by interviewing numerous University of Pennsylvania students;

h. Reviewed and analyzed the comments and statements made by University of Pennsylvania staff related to the challenged conduct at issue;

i. Investigated the adequacy of the named Plaintiffs to represent the putative class;

j. Drafted and filed the Complaints in this action;

k. Drafted initial discovery requests; and

l. Filed the present motion.

These investigative efforts represent a high standard of professionalism, dedication, and thoroughness, which have been marshaled to identify, develop and demonstrate the claims alleged in the Complaint. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the Court should consider in appointing interim class counsel.

Attorneys Poulin and Willey have been leaders and innovators in this area, and have taken the risk to represent students across the country in these first-of-their kind lawsuits. For example, attorneys Poulin and Willey have already been appointed co-lead counsel in the *In re Columbia University Tuition Refund Action,* 1:20-cv-03208-JMF, pending in the Southern District of New York and arising out of facts similar to this action. Collectively, the Anastopoulo Law Firm has been in communication with thousands of students from hundreds of schools across the country, and has already contributed over 1,800 hours on research, drafting, and filings specific to the tuition refund litigation nationwide.

Likewise, Carlson Lynch has been at the forefront of these "University COVID Refund" cases around the country, in traditional state courts, federal venues and specialized courts of claims. The firm is not only is handling one of the most robust set of related actions of any

8

plaintiff's firm in the nation,[1] it has developed a reputation for extensive pre-filing investigation, collaboration with numerous other counsel in quickly privately ordering class counsel, and innovation regarding claim presentation and refining (*e.g.* expanding class participation beyond the Spring 2020 semester and introduction of "Takings" claims in actions involving certain state schools).  Further, Carlson Lynch is specifically working with the Anastopoulo Firm on a number of analogous filed actions and investigations across the country.

### c. Proposed Co-Lead Interim Class Counsel is Experienced in Handling Class Actions and Other Complex Litigation

Next, the Court must consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" together with their "knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(ii-iii). As set forth in greater detail below, proposed Class Counsel have substantial experience handling complex litigation generally, along with mass actions and consumer class actions.

### i. Anastopoulo Law Firm, LLC

The Anastopoulo Law Firm has a physical presence in the Southeast United States, with offices located primarily in South Carolina and in North Carolina.  The Firm regularly handles cases throughout the country and employs over 100 dedicated professionals, including 28 attorneys

---

[1] Directly analogous filed and being litigated by Carlson Lynch include: *Hickey v. University of Pittsburgh,* W.D. Pa. Case No. 2:20-CV-690, *Coffman v. California University of Pennsylvania*, W.D. Pa Case No. 2:20-CV-00733, *Ramey v. Penn State University,* W.D. Pa. Case No. 2:20-CV-00753, *Rapuluchukwu C Okolo v. Maryville University*, MO 21st Cir. Case No. 20SL-CC02850, *Rahman v. Cornell University*, N.D. N.Y. Case No. 3:20-CV-0592, *Desai v. Carnegie Mellon University*, W.D. Pa. Case No. 2:20-CV-00844, *Zahn v. Ohio University,* Ohio Court of Claims Case No. 2020-00371JD, *Placko et al v. University of Illinois*, N.D. IL. Case No. 1:20-CV-03451, *Waitt v. Kent State University*, Ohio Court of Claims Case No. 2020-00392JD, *Doemel v. Arizona Board of Regents*, Dist. Ariz. Case No. 2:20-cv-01203-JJT, *Nedley v. University of Pennsylvania*, E.D. Pa. Case No. 2:20-cv-03109-TJS, *Loeb v. The Curators of the University of Missouri,* MO 13th Cir. Case No. 20BA-CV02127, *Tran v. Grand Canyon University*, Dist. Ariz. Case No. 2:20-CV-01283, *Reyes v. The University of Texas at Austin et al*, W.D. Tex. Case No. 6:20-CV-00607, *Choi v. The University of Southern California*, C.D. CA. Case No. 2:20-CV-05573; *Lamberth v. The Texas A&M University System*, S.D. TX. Case No. 4:20-CV-02605, *Fusca v. Temple University*, E.D. Pa. Case No. 2:20-CV-03434, *Lafleur v. Florida Board of Governors et al*, M.D. Fla. Case No. 8:20-CV-01665, *Gunter v. Louisiana State University, et al*, M.D. La. Case No. 3:20-CV-00346, and *Minichelli v. Syracuse University*, N.D. N.Y. Case No. 5:20-CV-00839.

who are collectively licensed to practice in over a dozen state and federal bars across the country including North and South Carolina, California, Washington D.C., Florida, Illinois and others.

The Firm's founding member, Akim Anastopoulo, has been representing Plaintiffs for the majority of his over 30 years of practice, and has extensive experience in mass and class actions. Mr. Anastopoulo and his Firm represented over 500 potential claimants in the *In Re: Vioxx Products Liability Litigation*, 2:05-md-01657-EEF-DEK. Likewise, the Firm represented over 1,000 claimants in the *In Re Baycol Prods.. Liab.. Litig.*, MDL No. 1431, Case No. 02-0160 (MJD/SRN) and State Actions Consolidated Under THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT Master File No.: 2002-CP-43-1041, where Mr. Anastopoulo served as lead counsel on two state bellwether cases.

Mr. Anastopoulo also served as joint lead counsel on multiple state cases that were eventually consolidated to a state class action regarding *In Re OxyContin Products Liability Class Action*, and served as sole lead counsel in South Carolina's first opioid state action, *Ken Love, et al* Civil Action No.: O1-CP-38-1059 (SC) vs. *Purdue Pharma A, L.P, et. al.*

Mr. Anastopoulo also served on the Daubert Submissions committee for the Thimerosal Litigation MDL and represented hundreds of individual clients in *In Re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,* 2000 U.S. Dist. LEXIS 12275, *47-48 (D. Pa. 2000).

A true and accurate copy of Anastopoulo Law Firm's Firm Resume is attached as **Exhibit A** to this Motion.

### ii. Eric M. Poulin

Eric Poulin is the Director of Litigation at Anastopoulo Law Firm and oversees the Firm's multiple litigation practice groups. Mr. Poulin is licensed to practice law in multiple state and

federal courts throughout the country. Mr. Poulin's practice is focused on complex personal injury matters, including catastrophic injury and death cases; products liability litigation; medical malpractice and nursing home abuse litigation; and insurance bad faith litigation.

Mr. Poulin has tried numerous cases to verdict, resulting in over $60,000,000 in single event personal injury jury verdicts. Licensed in California, Georgia, North Carolina, and South Carolina, together with many Federal District Courts, Mr. Poulin has litigated hundreds or thousands of cases through settlement or verdict and has recovered approximately $100,000,000 for his clients over the course of his career. Mr. Poulin has also handled appellate cases in the South Carolina Court of Appeals, the South Carolina Supreme Court, and the 4th Circuit Court of Appeals.

In 2016, Mr. Poulin was tapped by the South Carolina Supreme Court to record a video CLE on insurance law as part of the State Bar's "Essentials" series that is required viewing for all new admitees to the Bar.

Mr. Poulin is a member of the South Carolina Association of Justice and the American Association of Justice. Mr. Poulin has been featured in South Carolina Lawyers' Weekly's yearly top 10 verdicts and settlements profile for 3 of the last 4 years. In 2014, Mr. Poulin was featured in the U.S. Verdicts' "Top 100" national verdicts report. Mr. Poulin is a Super Lawyer's Rising Star, a National Trial Lawyers' Top 40 under 40 recipient, and two time National Academy of Professional Injury Attorneys' top 10 under 40 recipient.

Currently, Mr. Poulin has more than 30 cases pending throughout the country related to college and university COVID-19 litigation, and has been appointed co-lead counsel on the *In Re Columbia University Tuition Refund Action* in the Southern District of New York (1:20-cv-03208-JMF).

To date Mr. Poulin has committed significant time identifying and investigating the claims brought in this action, and working to develop the strategy that will ensure the students here and in his other cases across the country are fully compensated. Mr. Poulin has also communicated with and worked with dozens of potential additional class members and individuals to compile evidence in support of the claims at hand to ensure that the litigation is effectively prosecuted. In addition to the work with plaintiffs and potential class members in this action, Mr. Poulin has been in communication and discussions involving these matters with counsel nationally who have brought similar actions against other colleges and universities throughout the country.

Mr. Poulin has extensive experience in Federal Court and is intimately familiar with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Mr. Poulin has also studied the local rules of this Court. Mr. Poulin is well positioned to serve as interim co-lead counsel and, if appointed, will work diligently in representing the best interests of the Class. Mr. Poulin's Declaration is attached as **Exhibit B** to this Motion.

### iii. Roy T. Willey, IV

Roy T. Willey IV is nationally recognized as a leader in the fields of complex, contract based and high stakes litigation. He graduated with an A.B. from Harvard College and with honors from the Charleston School of Law, where he lives. Professionally, Mr. Willey has been recognized nationally for his legal leadership and currently serves as the Chairman of the Insurance Law Section for the American Association for Justice (AAJ), and National Co-chair of AAJ's Business Interruption Litigation Taskforce, both roles where he has been selected by the Plaintiff's bar and that recognize his leadership in contract-based consumer protection work. The latter of which was a specially appointed committee by AAJ to oversee the organization's response, strategy, and organization with respect to what is expected to be the largest litigation in history

arising from business losses as a result of COVID-19 and related contract based complex litigation. He has also been named class counsel and negotiated multi-faceted and multi-track complex litigation on behalf of consumers. Specific to this litigation Mr. Willey has been appointed co-lead counsel in the *In Re Columbia University Tuition Refund Action*, which arises out of the same facts and circumstances as these matters and is pending in the Southern District of New York (1:20-cv-03208-JMF).

Mr. Willey regularly tries cases for, and with, other attorneys; having helped them achieve significant jury verdicts in some of the most conservative venues in the country. These verdicts have been named among the largest in the nation and state where obtained, and Mr. Willey is a multi-year running recipient of top verdicts and settlements in South Carolina where he regularly tries complex cases. In addition to his trial practice, Mr. Willey has prosecuted and defended cases through appeal from the state level appellate courts in South Carolina and to the Fourth Circuit Court of Appeals.

Mr. Willey is a frequent lecturer and lawyer educator in the areas of complex litigation, civil procedure, e-discovery and ethics. His presentations have ranged from Certification issues in Collective and Class Actions (presented at the state trial lawyers conference that included sitting members of the judiciary), to top trial strategies, and top ethics challenges involving duties to prospective clients as a nationally available CLE. On a local level, he also gives back, lecturing at his local law school on the legal intricacies of contract law issues facing consumers, and civil procedure.

In his spare time, Mr. Willey serves as the state Chairman of South Carolina Equality (which is responsible for winning legalization of same-sex marriage in South Carolina), Vice Chair of THRIVE SAVES LIVES (a domestic violence victims' legal and housing relief organization),

and on the executive board of his local Charleston County Bar Association (where he was unanimously elected), as well as a host of other non-profit boards and committees.

For all of this, Mr. Willey has been named among *America's Top 100 High Stakes Litigators*, a *Super Lawyers Rising Star*, *National Top 10 Under 40*, and has been repeatedly recognized for both his community and professional involvement.

To date Mr. Willey has committed significant time identifying and investigating the claims brought in this action, and working to develop the strategy that will ensure the students here and in his other cases across the country are fully compensated. Mr. Willey has also communicated with and worked with other individuals to compile evidence in support of the claims at hand to ensure that the litigation is effectively prosecuted. In addition to the work with in this action, Mr. Willey has been in communication and discussions involving these matters with counsel nationally who have brought similar actions against other colleges and universities throughout the country.

Mr. Willey has extensive experience in Federal Court and is intimately familiar with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Mr. Willey has also studied the local rules of this Court. Mr. Willey is well positioned to serve as interim co-lead counsel and, if appointed, will work diligently in representing the best interests of the Class. Mr. Willey's Declaration is attached as **Exhibit C** to this Motion.

### iv. Carlson Lynch, LLP

Carlson Lynch, led here by partners Gary Lynch and Edward Ciolko, as noted above, have been among the earliest and most active counsel investigating, litigating and working co-operatively with firms, experts and innumerable affected students and parents across the country (including, in multiple actions, the Anastopoulo Law Firm) regarding non-repayment of, e.g., tuition, fees, and room & board owed to affected individuals because of unilateral, COVID-related

actions of their schools of higher learning.  These are unique, somewhat novel, cases touching on everything from basic fairness, contract law, public policy and organizational planning.  As such, it is imperative that the Court appoint sufficiently qualified, experienced and resourced counsel as soon as practicable to engage in moving the case, and any potential resolution thereto, expeditiously – especially as the clock winds down to the fall semester for University of Pennsylvania students.  Messrs. Lynch and Ciolko, alongside the Anastopoulus Law Firm, are uniquely suited to the task, given their place at the vanguard of these type of cases nationwide and the varied experience and success that got them there.

Gary Lynch is a founding partner in a twenty-attorney firm dedicated to representing plaintiffs in consumer, employment, financial services, and civil rights litigation. The firm has partners/offices in Pittsburgh, Philadelphia, Chicago, San Diego, and Los Angeles.  Mr.  Lynch has been engaged in the practice of law for over thirty years, with the majority of his career focusing on the litigation of complex class actions of all stripe.  As detailed in his resume, attached as **Exhibit D**, Courts in this district, across the state, and nationwide have not hesitated to appoint Mr. Lynch and his firm as lead or co-lead counsel in an array of complex financial/business practice actions such as the one before the Court.

Mr. Lynch is admitted to practice in the Eastern District of Pennsylvania, is familiar with the rules and procedures of this Court, and has prosecuted many cases in this District.  For example, Judge Gene E.K. Pratter recently appointed Mr. Lynch Interim Co-Lead Class Counsel for Financial Institutions in *In Re Wawa, Inc. Data Breach Litigation*, No. 2:19-cv-06019-GEKP, Docket No. 120 (EDPA June 12, 2020).    More directly relevant here, Judge C. Darnell Jones appointed Mr. Lynch Co-Lead Counsel in *In Re: FEDLOAN Student Loan Servicing Litigation,* No. 2:18-md-02833-CDJ, Docket No. 29 (EDPA 2018), a factually complex and legally novel

15

multidistrict litigation related to the country's largest student loan servicer's mismanagement of student loan accounts.

Edward W. Ciolko of Carlson Lynch LLP has dedicated his two-decade career to representing consumers, students, investors, pension plan participants, prisoners, small businesses and everyday citizens who have been harmed by individuals, businesses, or public and private entities in positions of power or fiduciary responsibility. Starting as an Attorney Advisor to Commissioner Sheila Anthony at the Federal Trade Commission, through helping build and lead the Consumer/Fiduciary/Antitrust Department at one of the largest plaintiffs' firms in the country to his current leadership position at Carlson Lynch, Mr. Ciolko is engaged at every stage of a consumer case, from plaintiff communications through settlement, trial and/or appellate work. Like Mr. Lynch, Mr. Ciolko has directly applicable experience in litigating on behalf of student borrowers harmed by misrepresentations regarding and mismanagement of education loans. *See generally Demyanenko-Todd v. Navient Corporation*, No. 3:17-cv-00772-RDM (MDPA). An expanded description of Mr. Ciolko's background, experience, and Rule 23(g)-related credentials, as well as the credentials/biography of his firm is attached hereto as **Exhibit E**.

Mr. Ciolko, located in the Philadelphia suburb of Conshohocken, PA, is also familiar with the rules and procedures of this Court, and has prosecuted numerous cases in this District. For example, he was lead Class Counsel in a landmark reinsurance action against Countrywide Financial Corporation where $34 million was recovered for a class of aggrieved mortgage borrowers[2] and, as part of the litigation, briefed, argued and won a seminal RESPA[3] standing

---

[2] *See generally Alston v. Countrywide Fin. Corp.*, No. 2:07-cv-03508-JS (EDPA).
[3] Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601 *et seq.*).

decision at the Third Circuit Court of Appeals.[4]  Messrs. Lynch's and Ciolko's familiarity with local rules, procedures and custom is a valuable asset to this, or any, class counsel leadership team.

### d. Proposed Co-Lead Interim Class Counsel Has the Ability and Desire to Commit the Necessary Resources to Represent the Classes

Anastopoulo and Carlson Lynch are law firms with sufficient resources and experience to prosecute this matter. In 2019 alone, the Anastopoulo Law Firm recovered over $68,000,000 on behalf of its clients. The Anastopoulo Law Firm employs over 100 dedicated legal professionals, including 28 attorneys.  In addition, the Anastopoulo Law Firm is among the remaining few firms nationally that regularly tries cases to verdict. For this purpose, the Firm employs four full time investigators, and maintains an internal focus group and mock trial program that allow it to test and develop theories and case strategies from the outset.

Specific to tuition refund litigation, Anastopoulo has assembled an in-house team of five lawyers who are working exclusively on such cases, and has set aside the resources necessary to grow this team as needed. Collectively, the team has already spent over 1,800 hours on research, drafting, and filings specific to the tuition refund litigation nationwide.

Carlson Lynch will continue to commit the same resources and effort to this litigation as they have committed to their other, successful class action litigation, recovering tens of millions of compensation for a wide range of class members, including in the complex actions mentioned above and in their attached exhibits; many larger than the instant cases. It will utilize the experience and expertise of not just Messrs. Lynch and Ciolko, but also a double-digit dedicated "University Refund" team of professionals from their Pittsburgh, PA, Chicago, Il and San Diego, CA offices.   Carlson Lynch's resources are not merely financial, but also include substantial expertise and work-product as discussed above, which were developed in other similar/analogous

---

[4] *Alston v. Countrywide Fin. Corp.,* 585 F.3d 753 (3rd Cir. 2009).

cases that will benefit Plaintiffs and the proposed class that they respectively seek to represent. This well-developed repository of information will help streamline the litigation. Like Anastopoulo Firm, Carlson Lynch handles every facet of each case taken on from investigation through trial and/or appeal, including to the Supreme Court of the United States.

Neither the Anastopoulo Law Firm nor Carlson Lynch has ever utilized third party litigation funding and each are committed to self-funding all of these cases on behalf of their clients. Anastopoulo and Carlson Lynch are willing to commit whatever resources are necessary to adequately represent the Class in this matter.

### III. The Court Should Order the Consolidation of Pleadings and Set a Deadline for the Filing of Plaintiffs' Consolidated Complaint

Rule 42(a) provides trial courts with the power to order the consolidation of pleadings in those instances where doing so "may tend to avoid unnecessary costs or delay." It is beyond question that the consolidation of pleadings would serve that purpose here.

Consolidated pleadings will permit the Court to receive memoranda and hear argument directed to one coherent pleading. Thus, for example, consideration of class action issues will be made considerably easier by a consolidated complaint, because the Court will not have to go through varying and conflicting class allegations that may have been stated in each separate complaint. The burdens of discovery management will also be lessened if consolidated pleadings can serve as a reference point. Even mundane clerical and administrative tasks will be made much less burdensome to counsel and the Court by the use of a consolidated complaint.

Plaintiffs request leave to file their Consolidated Complaint with the Court on or before twenty one (21) from the date that the Court enters the consolidation order. Doing so will promote the expeditious resolution of pleading matters, since any motions directed to the pleadings will be heard on a single hearing date to be set by the Court and will relate to only one set of pleadings.

Such procedures will not only simplify the presentation of any issues desired to be raised by defendant concerning the sufficiency of the complaint, but will also avoid duplicative motions and hearings and unnecessary delay in the resolution of such issues. Entry of the proposed order will therefore assist the Court by providing for the orderly, cost effective and timely prosecution of these related actions.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court (1) consolidate the *Smith* and *Nedley* actions under Federal Rule of Civil Procedure 42(a); (2) select and appoint Anastopoulo Law Firm and Carlson Lynch as co-lead interim Class counsel; (3) order Plaintiffs to file a consolidated complaint within twenty one (21) days of entry of a consolidation order; and (4) order that University of Pennsylvania's response to any consolidated complaint be due twenty-one days after such complaint is filed.

Dated: July 30, 2020

Respectfully submitted,

**ANASTOPOULO LAW FIRM, LLC**            **CARLSON LYNCH LLP**

/s/ Eric M. Poulin                                      /s/ Edward W. Ciolko
Eric M. Poulin**                                        Edward W. Ciolko**
Roy T. Willey**                                         Gary F. Lynch
32 Ann Street                                           Nicholas A Colella
Charleston, SC 29403
Telephone: (843) 614-8888
Email: eric@akimlawfirm.com                 1133 Penn Ave. 5th Floor
      roy@akimlawfirm.com                 Pittsburgh, PA 15222
                     Telephone:412-322-9243
     **Admitted Pro Hac Vice              Email: eciolko@carlsonlynch.com
                     ncolella@carlsonlynch.com
                     glynch@carlsonlynch.com

  -AND-

                           **ATTORNEYS FOR PLAINTIFF NEDLEY**

**CARPEY LAW, P.C.**
Stuart A. Carpey, #49490
600 W. Germantown Pike, Suite 400
Plymouth Meeting, AP 19462
Phone: (610) 834-6030
Email: scarpey@carpeylaw.com

**ATTORNEYS FOR PLAINTIFF SMITH**