# EXHIBIT 13

**STATE OF MICHIGAN**

**COURT OF CLAIMS**

KATELYN ZWIKER,

          Plaintiff,

**<u>OPINION AND ORDER</u>**

v

Case No.  20-000070-MK

LAKE SUPERIOR STATE UNIVERSITY, and
THE BOARD OF TRUSTEES OF LAKE
SUPERIOR STATE UNIVERSITY,

Hon. Michael J. Kelly

          Defendants.

_____/

Pending before the Court is defendants' motion for summary disposition filed pursuant to MCR 2.116(C)(8) and (C)(10).  Because the contractual agreements and other documentary evidence demonstrate defendants are entitled to judgment, the motion is GRANTED.[1]

## I.      BACKGROUND

According to the allegations contained in the complaint, plaintiff is a student at defendant Lake Superior State University.  During the Spring 2020 semester, plaintiff was enrolled at

---

[1] The Court notes that plaintiff often cites in support of her position the Court's opinion and order in *Milanov v Univ of Mich*, opinion and order of the Court of Claims, issued July 27, 2020 (Docket No. 20-000056-MK), which raised similar issues as those presented in this case.  In that case, the defendants denied that the alleged contracts existed; in fact, they argued that this state's jurisprudence refuses to recognize the existence of a contract between students and a university. Here, however, unlike in *Milanov*, defendants produced the contractual agreements referenced in the complaint.  The plain language of the contracts produced in this case compel a different result than was reached in *Milanov*.

-1-

defendant University and she lived in University-owned housing.  Plaintiff alleges that her tuition, room and board, and "fees" for the Spring 2020 semester were prepaid, using a combination of scholarships, loans, and out-of-pocket funds.  Plaintiff has filed this action as a putative class action.

The allegations in the complaint arise out of defendant University's decision to switch to online, distance learning during the middle of the Spring 2020 semester due to the onset of the global COVID-19 pandemic.  Plaintiff alleges that her online courses are not the equivalent of live, in-person instruction.  She also alleges that she moved out of on-campus housing in mid-March 2020 as a result of the pandemic and as a result of various executive orders entered by the Governor.  However, despite moving out, she alleges that she has not received a refund of amounts paid for room and board.  In addition, plaintiff alleges that she paid certain fees for the Spring 2020 semester, but she has not received the benefits associated with the payment of those fees.  Nor has she been given a refund of the prepaid fees.

This putative class action purports to bring claims on behalf of three classes: (1) the "tuition class"; (2) the "room and board class"; and (3) the "fees class."  Plaintiff asserts that the "tuition class" consists of all students who were charged for—or those who paid tuition on behalf of students—for the Spring 2020 semester and who were denied live, in-person instruction.  The "room and board" class consists of those who paid the costs of room and board and who moved out of on-campus housing before the completion of the Spring 2020 semester due to the pandemic. Finally, the "fee class" are those students who were charged enrollment fees for the Spring 2020 semester.

Count I of the complaint alleges breach of contract.  According to plaintiff, defendant University entered into contract with plaintiff and with those in the tuition class pursuant to which defendant University agreed to provide live, in-person instruction in exchange for payment of tuition.  Plaintiff has not attached the purported contract to her complaint, but she alleges that the agreement is in defendant University's possession.  Plaintiff asserts that defendant University breached this agreement by moving classes online for the second half of the Spring 2020 semester and by refusing to reduce or refund tuition paid by plaintiff.  Plaintiff alleges that she was damaged because she was deprived of the value of live, in-person instruction.

Count II alleges a breach of contract against defendants arising out of room and board amounts that were prepaid, but not refunded after (many) students moved out of university-owned housing in mid-March 2020.  The complaint alleges that plaintiff and other class members entered into contracts with defendant University for the provision of room and board, and that these contracts are in defendant University's possession.  Plaintiff request that the Court order defendants to issue refunds for the unused days of room and board.

Count III alleges breach of contract on behalf of plaintiff and the fee class.  Plaintiff alleges that she entered into a contract with defendant University pursuant to which plaintiff agreed to pay fees in exchange for university-provided services.  Plaintiff alleges that she has not received the expected benefit and that defendant has kept the fees.

Counts IV-VI, which appear to be pled in the alternative, allege unjust enrichment with respect to tuition, room and board, and fees, respectively.  The complaint alleges that defendant University has received benefits at the expense of plaintiff to which defendant University is not entitled.  Plaintiff alleges that equity demands defendants refund a portion of the monies paid for

that which she did not receive, i.e., live, in-person instruction, a prorated amount for unused room and board monies, and services.

## II.    DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

This matter is before the Court on defendants' July 9, 2020 motion for summary disposition. Defendants argue that live, in-person classes and online, distance learning are of equal value. Defendants cite the University's "One-Rate" tuition structure, which establishes the same tuition rate for online and in-person instruction, in support of their assertion that the different types of instruction have the same value. Defendants admit that plaintiff entered into two contracts with defendant University: one for tuition (Tuition Contract) and one for housing (Housing Contract). The Tuition Contract, asserts defendant, is a "Financial Responsibility Agreement" that all students must accept before they are permitted to register for classes. The Housing Contract is defendant University's "Residence Hall / Dining Service Contract," which incorporates the university's On-Campus Resident Handbook.

Defendants first argue that defendant Board of Trustees had a constitutional right to craft its COVID-19 response and that plaintiff cannot challenge or second-guess that response. In addition, defendant Board of Trustees argues that the First Amendment to the United States Constitution protects the academic freedom of public universities and precludes the types of challenges plaintiff brings in the instant case. In essence, defendant argues that how it provides education, housing, and services to students is a matter of academic freedom that cannot be reviewed by any court.

Turing to plaintiff's breach-of-contract claims, defendants argue that they did not breach the pertinent contracts. Beginning with the Tuition Contract, defendants argue that there is nothing

-4-

within the agreement promising live, in-person instruction to plaintiff or to any of the putative class members. To this end, defendants argue that the Tuition Contract does not address how course content is to be delivered, and that defendants have the authority to transition to online learning. Defendants also argue that the Tuition Contract covered the payment of fees, and that it was plaintiff's registration as a student, not her receipt of services, that obligated her to pay the pertinent fees. And defendants argue that plaintiff had the opportunity to access and benefit from programming funded by the fees during the Spring 2020 semester.

In the alternative, defendants argue that plaintiff cannot prevail on her breach-of-contract claim related to the Tuition Contract because she has not suffered any damages. Defendants note that the "One-Rate" tuition structure assigns an equal monetary value to both in-person and online methods of instruction. Thus, under the agreement, the methods of instruction are the same, argues defendants. And where plaintiff received the number of credit hours for which she paid, she has not been damaged. With respect to fees, defendants argue that plaintiff still had access to online services that were supported by her fees for the remainder of the Spring 2020 semester.

Defendants also argue that plaintiffs' breach of contract claim with regard to room and board fails as a matter of law. First, defendants argue that there was no breach of this agreement because plaintiff was permitted to stay on campus for the entire Spring 2020 semester, but she voluntarily chose to leave. Defendants argue that plaintiff was warned that moving out of on-campus housing did not terminate the Housing Contract. In addition, the Housing Contract expressly stated that no refunds would be given for unused meals. Second, defendant argues that a force majeure clause and other clauses excused defendant University from its obligations under the housing contract.

-5-

Lastly, defendants argue that plaintiff's unjust enrichment claims fail as a matter of law. They argue that the existence of the Tuition Contract and the Housing Contract preclude the Court from implying a contract as a matter of law. In addition, they argue that they did not receive an unwarranted benefit from any of the monies paid by plaintiff.

### III.   ANALYSIS

### A.  SUMMARY DISPOSITION STANDARDS

Defendants have moved this Court for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint, and summary disposition is appropriate "if the opposing party has failed to state a claim on which relief can be granted." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010) (citations, quotation marks, and alteration omitted). "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Id*. at 304-305. Here, plaintiff's complaint pleaded that the pertinent contracts were in defendants' possession, as permitted by MCR 2.113(C)(1)(b). This reference permits the Court to consider the contracts as "part of the pleadings for all purposes," MCR 2.113(C)(2), including summary disposition review under MCR 2.116(C)(8), see *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

As it concerns subrule (C)(10), summary disposition is warranted where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The moving party under subrule (C)(10) must identify specific issues and "must support its motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds

-6-

asserted." *Barnard Mfg Co Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009), citing MCR 2.116(G)(3). "If the moving party properly supports its motion, the burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id.* at 370 (citation and quotation marks omitted).

## B.  PLAINTIFF'S CONTRACT CLAIMS MUST BE DISMISSED

While defendants raise immunity arguments and contend that this Court should refrain from interfering with university affairs, the Court focuses instead on defendants' dispositive arguments regarding the contractual documents that they have produced and attached to their briefing.[2]  "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012).  A court must enforce unambiguous contractual language as it has been written.  *Id.*

## 1.  TUITION

Turning first to plaintiff's claims arising out of the Tuition Contract, plaintiff alleges at ¶¶ 56-58 of her complaint that defendant breached the agreement by failing to provide live, in-person instruction as required by the agreement.  Defendant argues that the Tuition Contract did not

---

[2] As alluded to and as will be discussed in more detail *infra*, the instant case is different from the *Milanov* case in a critical, and dispositive respect: defendants in the instant case produced the pertinent contracts.  And the plain language of the agreements presented in this case demonstrate that defendants are entitled to summary disposition.  Therefore, the instant case, and the result reached herein, is distinguishable from *Milanov*.

include any guarantees about whether instruction would be provided by way of live, in-person instruction or by distance learning.  Defendant also points out that page 1 of the Tuition Contract states that students such as plaintiff agree, upon registration:

> I understand that when I register for any class at Lake Superior State University, or receive any services from Lake Superior State University, I accept full responsibility *to pay all tuition, fees, and other associated costs assessed at any time as a result of my registration and/or receipt of services*.  [Emphasis added.]

In addition, the agreement provides that a student's failure to attend class does not absolve the student of any financial responsibility under the agreement.

In light of the unambiguous language of the Tuition Contract, the Court agrees with defendants' contention that the promise alleged by plaintiff does not appear in the agreement. Thus, there can be no breach as has been alleged by plaintiff.  Indeed, the Tuition Contract contains no guarantee of live, in-person instruction.  In fact, plaintiff has not made an attempt to point to any language contained within the agreement that makes the purported promise of live, in-person instruction alleged in her complaint.  A claim for breach of contract cannot be sustained where the language purportedly breached does not appear in the parties' agreement.  A court may not read into an unambiguous agreement a term not agreed to by the parties.  *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 719; 916 NW2d 218 (2018).  Furthermore, page 1 of the Tuition Contract declares that students accept full responsibility for all tuition—and fees, discussed below—as a result of registration and/or a receipt of services.  Here, plaintiff registered for classes and received services, i.e., instruction.  This, according to the unambiguous language of the Tuition Contract, rendered her liable for the payment of tuition, thereby providing another reason to defeat her claim for a refund in the instant case.

In arguing for a different outcome, plaintiff has not disputed the existence of the Tuition Contract, nor has she disputed that the document controls the parties' relationship.  Instead, she argues that "discovery will be necessary to flesh out the full parameters of the contractual terms, including whether there was an explicit representation that classes would be in person, or whether that is simply a fair implication from LSSU's statements.  However, plaintiff has offered little more than conjecture, and conjecture will not beget discovery.  See *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011).

Plaintiffs' documentary evidence does not change the result, either.  Plaintiff has attached to her response what appear to be screenshots from defendant LSSU's course catalog.[3]  The screenshots show that certain courses allow students to select "Traditional Campus Instructional Method."  It is not clear, however, whether plaintiff was registered for these courses during the Spring 2020 semester.  Moreover, plaintiff has not presented an argument that the screenshots from the course catalog can or should be incorporated into the Tuition Contract.  Contracting parties may incorporate a secondary document into a primary document by including a reference in the primary document regarding the secondary document.  *Peabody v DiMeglio* 306 Mich App 397, 406-407; 856 NW2d 245 (2014).  Here, however, plaintiff has not presented an argument concerning why the Court should conclude that the Tuition Contract references, let alone expresses an intent to incorporate, the catalog.  As defendants point out, while the Tuition Contract references a refund policy contained within the University catalog, it does not incorporate the entire catalog.

---

[3] Given that this document was not attached to or referenced in the pleadings, plaintiff has essentially invited the Court to decide this motion for summary disposition under MCR 2.116(C)(10). As noted above, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10).  For the avoidance of doubt, and to conform to the parties' arguments and documentary evidence, the Court decides the motion under subrule (C)(10).

And again, plaintiff has not presented documentary evidence that the courses for which she signed registered in the Spring 2020 semester included such a guarantee, even assuming the guarantee could be incorporated into the Tuition Contract.

In fact, instead of arguing that the terms were incorporated, plaintiff argues that the parties had an implied contract for live, in-person instruction based on her subjective expectations. However, "[a]n implied contract cannot be enforced where the parties have made an express contract covering the same subject matter." *Scholz v Montgomery Ward & Co, Inc*, 437 Mich 83, 93; 468 NW2d 845 (1991). In addition, a party's expectations cannot supersede the language of an unambiguous contract, and courts are prohibited from rewriting agreements to align with a party's alleged expectation. See, e.g., *Kendzierski v Macomb Co*, 503 Mich 296, 312; 931 NW2d 604 (2019); *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 60; 664 NW2d 776 (2003).

## 2. FEES

Defendants are entitled to summary disposition on Count III of plaintiff's complaint as well, which alleges a breach of contract related to the payment of certain fees. While plaintiff's pleading and briefing do not identify the fees at issue, defendants' documentary evidence reveals that plaintiff was charged certain fees upon registration for the Spring 2020 Semester: a "Program Fee"; a "Special Course Fee"; a "Student Activity-Media Fee"; an "Environment Fee"; and an "Athletic Fee." As an initial matter, the complaint and briefing are deficient because they fail to identify the precise promises at issue with respect to fees. And as defendants point out, the "Tuition Contract" specifies that fees are assessed and owed "as a result of [ ] registration[.]" Thus, according to the unambiguous terms of the parties' agreement, it was the act of registering for classes that required plaintiff to pay the fees at issue, not the receipt of certain services. The unambiguous language of the parties' agreement belies the notion that a refund is owed under the

-10-

agreement if services are not utilized, for one reason or another.  And on this point, plaintiff has not responded to defendants' argument regarding the language employed in the Tuition Contract. Instead, she takes issue with defendants' alternative conclusion that she was not damaged.  Given the conclusion that no breach occurred, however, there is no need to consider whether plaintiff was damaged when defendants still provided certain services to her and other students despite the pandemic and the limited on-campus activities.

### 3.   ROOM AND BOARD

Count II of the complaint alleges a breach of contract with regard to the Housing Contract. The complaint alleges that defendants breached the Housing Contract by not providing housing and meals for the entire semester.  Defendants are entitled to summary disposition on this claim as well.  The documentary evidence reveals that students were permitted to remain in university-owned housing and that meal service would continue if students chose to remain.  While emails reveal that students were encouraged to leave or to not return to campus after the Easter holiday, there is no evidence that defendants ever prevented students from returning or otherwise failed to make housing and meals available.  In addition, defendants' documentary evidence reveals that students were allowed to keep their belongings in on-campus housing throughout the duration of the Housing Contract.  As a result, summary disposition is warranted on this claim under MCR 2.116(C)(10).[4]

---

[4] Because the Court concludes that defendants provided that which they were required under the Housing Contract, there is no need to consider the import of the force majeure clause cited by defendants.

Moreover, the unambiguous language of the Housing Contract belies any claim that plaintiff was entitled to the "refund" she seeks.  Notably, ¶ 8 of the agreement expressly states that moving to "a private home or other housing" "shall not" terminate the residency and financial conditions of the Housing Contract.  The agreement also provides at ¶ 2 that "No refund is made for unused meals."  Furthermore, the agreement states that, upon signing the Housing Contract, a student became responsible "for all the terms and financial obligations" expressed therein until the end of the semester.  This language is plain and unambiguous, and it expressly provides what is to happen in the event a student does not utilize the meals and housing that have been provided by the University.  This language defeats plaintiff's assertion that a refund is owed in the event a student moves out of on-campus housing and no longer uses her meal plan.

C.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAIL TO STATE A CLAIM

Counts III-VI of plaintiff's complaint must be dismissed as well.  These claims all state, in the alternative to plaintiff's breach-of-contract claims, that recovery is permitted under an unjust enrichment theory.  However, "an unjust enrichment claim is available only if there is no express contract covering the same subject matter." *Local Emergency Fin Assistance Loan Bd f Blackwell*, 299 Mich App 727, 734; 832 NW2d 401 (2013) (citation and quotation marks omitted).  The existence of the Tuition Contract and Housing Contract—which existence plaintiff does not dispute—foreclose her ability to proceed on an unjust enrichment theory.  These claims will be dismissed pursuant to MCR 2.116(C)(8).

IV.   CONCLUSION

IT IS HEREBY ORDERED that defendants' motion for summary disposition is GRANTED pursuant to MCR 2.116(C)(8) and (C)(10).

-13-

This is a final order that resolves the last pending claim and closes the case.


August 31, 2020                                    _____
                                                   Michael J. Kelly
                                                   Judge, Court of Claims