**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ASHA SMITH and EMMA NEDLEY, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. 2:20-cv-02086-TJS |
| Plaintiffs, | ) ) ) | Hon. Timothy J. Savage |
| v. | ) ) | |
| UNIVERSITY OF PENNSYLVANIA, | ) ) | |
| Defendant. | ) ) ) ) | |

**DEFENDANT TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA'S
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Trustees of the University of Pennsylvania ("Penn" or the "University")

hereby submits the following statement of material facts upon which Penn relies in support of its

Motion for Summary Judgment:

1.      The above-captioned matter is a putative class action involving certain fees paid

by Plaintiffs to Penn for the spring 2020 semester. *See* ECF No. 18, Amended Complaint ("Am.

Compl.") ¶¶ 3-4.

**The Parties**

2.      The University of Pennsylvania is a university located in Philadelphia,

Pennsylvania. *Id*. ¶ 4-5.

3.      Smith testified as follows with regards to her enrollment as a graduate student at

Penn:

1

Q [Defendant's counsel]:  When did you begin your studies at Penn? Was it the fall of 2019?

A [Smith]: Yes.

Q [Defendant's counsel]:  And what program within GSE [Graduate School of Education] did you pursue?

A [Smith]: Education culture and society.

Plfs.' Ex. C, ECF No. 78-5 ("Smith Depo.") at 16:16-20.

4.      Nedley was a full-time undergraduate student at Penn during the spring 2020 semester.  Am. Compl. ¶ 11.

**Plaintiffs' Claims**

5.      Nedley alleges that she is entitled to 42% of the fees paid for the spring 2020 semester, less any fees already refunded, which amount "may be further adjusted" based on the value of "such minimal services that remained available past the date when Defendant ceased in-person instruction and required students to vacate campus."  Ex. 1 to Decl. of M. Kidney in Supp. Of Def.'s Mot. for Summary Judgment ("Kidney Decl.") ("Nedley Responses to Interrogatories") at 6.

**Plaintiffs' Financials**

6.      Smith testified as follows with regards to Penn's Student Financial Responsibility Statement:

Q [Defendant's counsel]:  And tell me when you recall seeing it previously?

A [Smith]: Prior to beginning classes, I was reviewing this document with my financial aid advisor, I believe.

Q [Defendant's counsel]: Okay. And do you recall hitting the, I agree, button at some time prior to the beginning of classes?

A [Smith]: Yes.

Q [Defendant's counsel]: And if I told you that you hit – that the university records indicate that you agreed to this on August 14th, 2019, does that sound right?

A [Smith]: Yes.

Smith Depo. at 19:21-20:8.

7.     According to Smith's "Student Account – Spring 2020 – Account Activity," the amount that Smith owed in fees for the spring 2020 semester was assessed and payable by November 26, 2019. Ex. 2 to Kidney Decl. at Smith Production p.23.

8.     Smith testified as follows with regards to a spring 2020 semester technology fee:

Q [Defendant's counsel]: And you did not pay a technology fee; is that correct?

A [Smith]: Not according to this [student account statement] document.

Q [Defendant's counsel]: And when you say, not according to this document, is that consistent also with your recollection that you did not pay a technology fee?

A [Smith]: I'm unsure.

Smith Depo. at 27:8-14.

9.     Nedley testified as follows with regards to when she agreed to Penn's Student Financial Responsibility Statement:

Q [Defendant's counsel]:  Do you recall that you – the university asked you to review this document and asked whether you agreed with it, indicating that you had read and accepted the financial responsibility statement?

[Plaintiff's counsel] Objection; form. Assumes facts not in evidence. But you can answer.

A [Nedley]: Yes.

Q [Defendant's counsel]: And does it refresh your recollection if I represent to you that Penn's records indicate that you pressed the I agree button on August 20th, 2019?

[Plaintiff's counsel] Objection; form. You can answer.

A [Nedley]: Yes.

Q [Defendant's counsel]: And does that sound about right to you?

3

A [Nedley]: Yes. That would be before I started classes.

Plfs.' Ex. D, ECF No. 78-5 ("Nedley Depo.") at 26:13-27:6.

10.      According to Nedley's "Student Account – Spring 2020 – Account Activity," the amount that Nedley owed in fees for the spring 2020 semester was assessed and payable by November 8, 2019.  Ex. 3 to Kidney Decl. at NEDLEY 000003.[1]

11.      Penn charged Nedley $2,568 for the spring 2020 semester general fee.  *Id.*

12.      Penn charged Nedley $304 for the spring 2020 semester clinical fee.  *Id.*

13.      Penn charged Nedley $435 for the spring 2020 semester technology fee.  *Id.*

14.      Nedley testified as follows with regards to the General, Clinical, and Technology Fees Penn charged her for the spring 2020 semester:

> Q [Defendant's counsel]: Is it your understanding that Penn charged your account a general fee in the amount of 2,568 for the spring 2020 semester?
>
> A [Nedley]: Yes.
>
> Q [Defendant's counsel]: Is it your understanding Penn charged you a clinical fee in the amount of $304 for the spring 2020 semester?
>
> A [Nedley]: Yes.
>
> Q [Defendant's counsel]: Is it your understanding that Penn charged your account a technology fee in the amount of $435 for the spring 2020 semester?
>
> A [Nedley]: Yes.

Nedley Depo. at 88:17-89:3.

15.      The total of the foregoing three fees is $3,307.  ($2,568 + $304 + $435 = $3,307.)

---

[1]  Pursuant to this Court's direction during the telephonic conference of the Parties with the Court on February 7, 2022, undersigned counsel has redacted from the public version of the Statement of Material Facts Not In Dispute (and supporting exhibits) information specific to the Plaintiffs that is protected by privacy considerations.

16.     Penn calculated Nedley's need-based financial aid by subtracting her Expected Family Contribution from the total Cost of Attendance, and then offered an aid award that covered the entire difference.  Ex. 4 to Kidney Decl. at PENN_0000866.

17.     Nedley's cost of attendance was $76,444 for the 2019-2020 Academic Year. *Id.*

18.     Penn calculated Nedley's Expected Family Contribution ("EFC") to be ██████

*Id.*

19.     This financial aid award totaled ██████ (or $76,444 – ██████).

**Fee Descriptions**

20.     In their initial complaints and the general allegations of the Amended Complaint, Plaintiffs allege that the General Fee description states that it "is assessed to all undergraduate, graduate, and professional students and directly supports a variety of student related activities, services, and spaces."  Am. Compl. ¶ 28; Case No. 2:20-cv-02086, ECF No. 1 ¶ 23;  Case No. 2:20-cv-03109, ECF No. 1 ¶ 20.

21.     In their initial complaints, Plaintiffs allege that the clinical fee description states: "This mandatory fee gives students unlimited access to Student Health Service" (hereinafter referred to as "Spring 2020 Semester Clinical Fee Description").  Case No. 2:20-cv-02086, ECF No. 1 ¶ 23; Case No. 2:20-cv-03109, ECF No. 1 ¶ 20.

22.     In their initial complaints, Plaintiffs allege that the technology fee description states:  "This fee assists with the cost of computer labs and technological services" (hereinafter referred to as "Spring 2020 Semester Technology Fee Description").  Case No. 2:20-cv-02086, ECF No. 1 ¶ 23; Case No. 2:20-cv-03109, ECF No. 1 ¶ 20.

23.     These General, Clinical, and Technology Fee Descriptions were in effect and posted on Penn's website beginning in at least August 2019 and continuing through the entirety of the spring 2020 semester.  Decl. of T. Lewis ("Lewis Decl.") ¶ 3.

24.     Plaintiffs attached a copy of the spring 2020 semester General, Clinical, and Technology Fee Descriptions as Exhibit B to their Memorandum in Support of Class Certification. ECF No. 78-4.

25.     Nedley testified as follows regarding the first time she saw the Spring 2020 Semester General, Clinical, and Technology Fee Descriptions:

Q [Defendant's counsel]: All right. And the top half asks for a contribution to The Wayback Machine. And then below that, you will see a description of the general fee, technology fee, and clinical fee on what has been marked as Penn 00001197. Do you see that?

A [Nedley]: 1197?

Q [Defendant's counsel]: Yes.

A [Nedley]: Yes.

Q [Defendant's counsel]: Take a minute and read what it says under general fee, technology fee, and clinical fee. Tell me when you're done reading.

A [Nedley]: I'm done.

Q [Defendant's counsel]: Do you recognize this language?

A [Nedley]: Yes.

Q [Defendant's counsel]: And when did you first see it?

A [Nedley]: Prior—whenever I received my initial financial aid package and was just looking at the university in general.

Nedley Depo. at 134:12-135:5.

26.     Smith testified as follows regarding the Spring 2020 Semester General and Clinical Fee Descriptions:

Q [Defendant's counsel]: And so the general fee language in Exhibits 8 and 9 [the spring 2020 fee descriptions], you -- just to recap, you remember seeing this language prior to the spring 2020 semester, you're just not sure when –

A [Smith]: Right.

Q [Defendant's counsel]: -- exactly.

\*  \*  \*

Q [Defendant's counsel]: And let me direct you to the clinical fee language in Exhibits 8 and 9 [the spring 2020 fee descriptions]. Do you remember seeing this language before the spring 2020 semester?

A [Smith]: Yes.

Smith Depo. 76:22-4:77; 78:4-8.

27. The three fee descriptions cited in Plaintiffs' Amended Complaint, Am. Compl, ¶¶ 147-149, were not in place until after the conclusion of the spring 2020 semester.  "Lewis Decl." ¶¶ 3, 4.

**Penn's Offerings During the Spring 2020 Semester**

General Fee

28. Regarding *activities* that Penn offered during the spring 2020 semester, both Smith and Nedley admitted as follows in response to Request for Admission No. 7, which asked for an admission "that, after the University's transition to remote instruction in the Spring 2020 Semester, students were able to participate (either remotely or in-person) 'in student activities and events[,]' as described in paragraph 30 of the complaint":

Response: Admitted that some virtual/remote student activities and events were offered, but denied that Defendant offered all student activities and events to students for the entire spring 2020 semester.

Ex. 5 to Kidney Decl. ("Nedley Responses to Request for Admissions") at 6; Ex. 6 to Kidney Decl. ("Smith Responses to Request for Admissions") at 4.

29.     Nedley testified as follows with regards to the student activities that Penn offered during the spring 2020 semester:

> Q [Defendant's counsel]: Were there any meetings of [the Penn Athletics Wharton Leadership Academy] in the second half of the spring 2020 semester after the pandemic hit?
>
> A [Nedley]: There was a gap because everyone – most of our season were just ripped from us. And then, yes, eventually we did come back together via Zoom.
>
> Q [Defendant's counsel]: And that was during the spring 2020 semester?
>
> A [Nedley]: Yes.
>
> Q [Defendant's counsel]: And do you remember when that occurred that you eventually started having meetings in the spring 2020 semester?
>
> A [Nedley]: I'm not sure of the exact date, but I believe by the end of March or the beginning of – first week of April.
>
> *       *       *
>
> Q [Defendant's counsel]: So would you agree that you were able to participate in either, sometimes remotely, at least one activity or service supported by the general fee that was offered by the university after the university transitioned to remote instruction in the spring 2020 semester?
>
> A [Nedley]: Yes.

Nedley Depo. at 105:10-105:25, 98:13-21, 122:8-14.

30.     Regarding *services* that Penn offered during the spring 2020 semester, both Nedley and Smith admitted as follows in response to Request for Admission No. 9, which asked for an admission "that, after the University's transition to remote instruction in the Spring 2020 Semester, students could use, or participate in, (either remotely or in-person) some services, resources, events, or activities (including student activities) offered by the University":

> Response: As noted above, admitted that students could participate in some virtual services, resources, events, or activities, but denied that the Defendant offered all services, resources, events, and activities to students for the entire Spring 2020 semester.

Nedley Responses to Request for Admissions at 6; Smith Responses to Request for Admissions at 5.

31.     Nedley testified as follows with regards to student services that Penn offered during the spring 2020 semester:

> Q [Defendant's counsel]: Are you aware that the recreation center provided virtual exercise classes following the university's transition to remote instruction in the spring 2020 semester?
>
> A [Nedley]: Yes.

Nedley Depo. at 115:2-6.

32.     Smith testified as follows with regards to the student services that Penn offered during the spring 2020 semester:

> Q [Defendant's counsel]: Were you aware or are you aware that career services continued to hold virtual events and appointments following the university's transition to remote instruction in the spring 2020 semester?
>
> A [Smith]: I was aware, but they were not the same programming at all as what we had prior.
>
> *      *      *
>
> Q [Defendant's counsel]: And are you aware that the university continued to provide counseling and psychological services to students remotely following the university's transition to remote instruction in the spring 2020 semester?
>
> A [Smith]: Yes.
>
> *      *      *
>
> Q [Defendant's counsel]: And would you agree that the university did provide learning support, albeit remotely, following the transition to remote instruction in the spring 2020 semester?
>
> A [Smith]: Can you explain what learning support would look like?
>
> Q [Defendant's counsel]: If somebody wanted tutoring or help writing a paper.
>
> A [Smith]: It was available in a limited capacity.

Smith Depo at 54:23-55:4, 60:4-9; 63:4-13.

33.     Regarding *spaces* that Penn offered during the spring 2020 semester, Penn's

Public Safety Headquarters remained open to community members for walk-in services. Lewis

Decl. ¶ 5.

34.     Penn's Public Safety Headquarters maintained two staff members in-person in

order to receive walk-in cases. *Id*. ¶ 5.

35.     In addition, Nedley testified as follows with regards to Penn's Counseling and

Psychological Services center that Penn offered during the spring 2020 semester:

> Q [Defendant's counsel]: Are you aware that the university counseling and psychological
> services, CAPS, continued to maintain an on-campus presence and allowed drop-in
> appointments following the university's transition to remote instruction in the spring
> 2020 semester?
>
> A [Nedley]: Yes, I was aware of that. And I did not seek direct service. But several
> people that I had talked to had sought to receive services, and there was such a backlog
> that it was hard to physically, like, do a drop-in appointment. But yes, it was there, but
> availability was limited.

Nedley Depo. 113:21-114:7.

36.     Smith testified as follows with regards to student-related activities, services, and

spaces that Penn provided after the pandemic began:

> Q [Defendant's counsel]: And would you agree with me that although you thought that
> the activities and services that were accessible to you in the spring 2020 semester after
> the transition to remote instruction were deficient, you were provided a variety—access
> to a variety of student-related activity services and spaces?
>
> [Plaintiff's counsel]: Objection. Ambiguous.
>
> A [Smith]: Yes. But they were different than the services previously provided. My
> expectations of the services for spring of 2020 was that they would be akin to what I was
> given in fall of 2019. And they were not.

Smith Depo. at 77:16-78:3.

Technology Fee

37.     Penn's School of Arts and Sciences provisioned Virtual Desktops that students

could use to access software remotely that was previously available in campus computer labs.

Decl. of W. Petrofsky ¶ 3.

38.     Nedley testified as follows regarding access to technological services:

Q [Defendant's counsel]: While you were in living at home in the suburbs of Pittsburgh
during the period of the spring 2020 semester, that was – that had remote instruction. Did
you make use of technological services offered by the university?

A [Nedley]: Can you detail what you mean by technological services?

Q [Defendant's counsel]: Well, at a minimum, I would say something we've already
discussed, participating in Zoom, but then I'm going to ask if you participated in any
other technological services.

A [Nedley]: I used Zoom and the WCONLINE platform, which is what I tutor through.

Q [Defendant's counsel]: Anything else?

A [Nedley]: I used Perusal for classes, which is supported though the Canvas Network,
which is where our classes are held. And that was just a way to collaborate with students
on a document.

Q [Defendant's counsel]: Did you make use of any learning support yourself? We've
already talked about you tutoring. Did you make – did you utilize any learning support
during the period of the 2020 spring semester that was remote?

A [Nedley]: I used office hours.

*       *       *

Q [Defendant's counsel]: Would you agree that the university did provide technological
services to students in the portion of the spring 2020 semester that was remote?

A [Nedley]: Yes.

Nedley Depo. at 122:24-123:22; 128:7-11.

11

Clinical Fee

39.     Students had virtual access to Student Health Services throughout the entire

spring 2020 semester. Lewis Decl. ¶ 6.

40.     There was no limit on the number of times a student could access Student Health

Services virtually.  *Id.*

41.     Nedley testified as follows regarding virtual access to Student Health Services:

Q [Defendant's counsel]: Understood. And were you aware that you could access student
health services virtually?

A [Nedley]: Yes.

Nedley Depo. at 96:4-7.

42.     Students also had in-person access to Student Health Services throughout the

entire spring 2020 semester.  Lewis Decl. ¶ 6.

43.     There was no limit on the number of times a student could access Student Health

Services in-person.  *Id.*


Dated: February 21, 2022

/s/ Virginia A. Gibson
Virginia A. Gibson, PA Bar No. 32520
Alexander B. Bowerman, PA Bar No. 321990
HOGAN LOVELLS US LLP
1735 Market Street
Philadelphia, PA 19103
Telephone: (267) 675-4635

Michael L. Kidney (admitted *pro hac vice*)
Jessica L. Ellsworth (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Counsel for Defendant Trustees of the*
*University of Pennsylvania*